IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ROGER OTT, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| COUNTRY CLASSIC CARS, L.L.C. ) | Trial by Jury Demanded |
| RUSSELL NOEL, and STEVE DOE ) | |
| (last name unknown) ) | |
|     Defendants. ) | |

## COMPLAINT

Plaintiff, Roger Ott, by his undersigned attorneys, complains against Defendants as follows:

### Statement of the Case

1. On or about June 19, 2020, Roger Ott purchased a 1969 Chevrolet Nova (VIN 113279W418305) ("Nova" or "vehicle") from Country Classic Cars, L.L.C. ("Defendants" or "CCC") for a price of $15,899.00 including a service fee. *See* Exhibit 1.

2. Ott purchased the 1969 Nova after being deceived by CCC, its salesman Steve Doe (last name unknown) and its owner, Russell Noel. Defendants deceived him by misrepresenting or omitting numerous material facts in the online advertisement for the Nova, which Ott viewed before deciding to purchase it. See Exhibit 2.

3. On or about the week of June 8, 2020, Ott first contacted CCC about purchasing two El Caminos after viewing online advertisements for them. He spoke to Steve. Ott informed Steve that Ott was looking for a Chevrolet which was a "good everyday driver" and had a 350 cubic inch engine. Ott rejected purchasing either of the two El Caminos because they had 305 or 307 engines which he told Steve were "crap" because they had "bad cams" in them.

4. Ott stated he did not want the El Caminos because of the engine size, and asked Steve to suggest a Chevrolet that met Ott's criteria. Steve suggested the Nova. CCC and/or Steve also knowingly failed to disclose that the Nova was not properly rebuilt, making it inoperable and/or dangerous to drive in violation of Illinois and Wisconsin safety standards. The required Illinois Disclosure of Rebuilt Vehicle Status defines a REBUILT VEHICLE as: "*A vehicle for which a Salvage Certificate has been issued and which subsequently has been put back into its original or operating condition by a licensed rebuilder and which has met all requirements of a salvage vehicle inspection.*" See 625 ILCS 5/5-104.3. The Nova was not in operating condition and therefore could not be given a salvage title in Illinois or Wisconsin and thus cannot be insured or driven.

5. Ott also looked at CCC's online advertisement for the Nova which also omitted to disclose: (a) its many material structural and mechanical defects; and (b) that it was inoperable and could not be driven or insured. CCC also misrepresented in the online advertisement that the body was straight, and the Nova was in operable condition and could be driven. Exhibit 2.

6. After looking at the Nova online, Ott called Steve again. Ott asked Steve what size engine the Nova had. Steve appeared to ask someone else and then stated the Nova had a 350 cubic inch engine. Ott also asked again if the Nova was a "good everyday driver" Steve confirmed it was. Ott also stated that the Nova should be a 7-8 on a scale of 1-10 given the price. Steve agreed with that statement. In fact, the Nova was in terrible condition, could not be driven and did not have a 350 engine.

7. Had Ott known the truth about the Nova, he would not have purchased it.

**Parties**

8. Plaintiff Ott is a citizen of Wisconsin and resides in Whitewater, Wisconsin.

9. Defendant CCC is an Illinois corporation with its principal place of business in Staunton, Illinois.

10. Defendant Russell Noel is a citizen of Illinois and resides in Illinois. Noel is the owner of CCC. Noel authorized the deceptive online advertisement for the Nova and thus directly participated in the consumer fraud that is the subject of this lawsuit.

11. Defendant Steve Doe (last name unknown) is a citizen of Illinois and resides in Illinois. Steve is a salesman for CCC and participated in the consumer fraud alleged herein.

## Jurisdiction and Venue

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendants are completely diverse and the amount in controversy exceeds $75,000, excluding costs and interest. Ott suffered over $12,500 in diminished value damages, shipping costs of $375, and interest and finance charges of $53. He also suffered at least $10,000 in aggravation, inconvenience, and emotional distress damages. He is entitled to punitive damages of over $69,000 due to the willful and wanton nature of the Defendants' misconduct.

13. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to Plaintiff's claims against Defendants occurred in this district.

## Facts

14. On or about the week of June 8, 2020, Ott saw CCC's online advertisements for two vintage Chevrolet El Caminos. He telephoned CCC and spoke to CCC's salesman Steve. He told Steve he was looking for a "good everyday driver" and asked about the engine size of the El Caminos saying he wanted a Chevy 350 cubic inch engine. Steve told him the El Caminos had 305 or 307 cubic inch engines. Ott told him those engines were "crap" because they had "bad cams" in them. Ott then asked what other Chevrolets CCC had available that met his criteria. Steve

suggested the Nova. Steve made this suggestion even though the Nova did not meet Ott's criteria. It was not operational and could not be driven. Ott would not have even considered purchasing the Nova if he had known the Nova: (a) only had a 305 cubic inch engine; and (b) was not operational and could not be driven. Steve also failed to disclose the many material structural and mechanical defects in the Nova that rendered it nonoperational, and dangerous to drive (even if could be made somewhat operational).

15. Thereafter because of Steve and CCC's material misrepresentations and omissions as alleged above, Ott looked at CCC's online advertisement for the Nova (Exhibit 2), which on information and belief was created and published under the supervision of Noel and Noel was aware of its contents and of the material misrepresentations and omission in the advertisement. The advertisement omitted material facts that the Nova had not been properly rebuilt and was inoperable and/or dangerous to drive. The advertisement misrepresented that the Nova had "a good straight body" and "runs/drives" when in fact: (a) the Nova's body was not straight and had defects making it dangerous to drive if it had been operable; and (b) the Nova was not operable and could not be driven safely due to many material mechanical and structural defects as set forth in paragraph 21 below.

16. As a result of the advertisement's material misrepresentations and omissions and Steve's earlier misrepresentations and omissions, Ott called Steve back to inquire about purchasing the Nova. Steve again assured Ott that the Nova met Ott's condition of being a "good everyday driver." Ott also asked what size engine was in the Nova. Steve asked someone and then stated the Nova had a 350 engine. When Ott stated the Nova must be a 7 to 8 on a scale of 1-10 based on its price in response Steve confirmed that the Nova's condition was a 7 to 8. Steve also offered to

reduce the $16,850 advertised price to $15,800. In these discussions, Steve did not disclose the material defects CCC knew the Nova suffered and that it was inoperable and could not be driven.

17. But for the misrepresentations and omissions by Steve in the parties' conversations and by Noel and CCC in the online advertisement, Ott would not have agreed to purchase the Nova.

18. Ott paid $15,899, including a $99 service fee and, in addition, paid $375 for the Nova to be shipped to his home in Wisconsin and incurred finance interest charges of approximately $53. See Exhibits 1, 3 hereto.

19. Upon delivery, Ott noticed several defects in the Nova and notified CCC immediately. These defects included: having to prime the carburetor several times to start the Nova, a loose power steering pump, misaligned front bumper fenders to hood, worn tires, nonfunctioning emergency brake, nonworking lights including turn signals and brakes, no inner door exit handles nor arm rests, no seat belts, and multiple nonfunctioning electrical components. The driver side door was only operable from outside of the Nova, meaning you must reach out the window to open the door from the outside. The transmission does not shift.

20. Ott had the Nova inspected and learned about numerous other problems which prevented it from being registered and titled in Wisconsin unless numerous defects were corrected, including brakes, lights, exit interior door handles, seat belts, and many other safety concerns.

21. Thereafter, Ott repeatedly requested that CCC unwind the transaction and refund the purchase price and the shipping, finance and other costs. CCC refused.

22. The Nova suffers from the following defects (which Defendants, as experts in the used and classic vintage car business, knew of at the time of sale):

- Vehicle's condition at delivery that prevented operation: 1) Pouring gas into the carburetor to prime the engine for starting, 2) nonfunctioning emergency brake, 3) broken and shorted out wiring, resulting in no turn signals nor brake lights, 4) no interior door handle

making an emergency vehicle exit impossible, and 5) malfunctioning features, such as wipers and climate controls.

- Vehicle exterior and structural issues: 1) The hood's inability to seat on fenders, 2) front bumper skewed and pushed backwards, 3) improperly latching doors, 4) paint color tone and thickness variance between body components, 5) rear axle not centered to vehicle and tipped downward, 6) limited driveshaft travel, 7) rippled paint caused by over applied body filler, and numerous other defects.
- Engine Compartment: 1) Mid 1980's 305 cubic inch engine, 2) non-operating engine without emission controls, 3) spliced wire looms, 4) dried out wiring, and 5) improperly fastened power steering pump.
- Trunk: 1) Lid skewed in horizontal and vertical plains, 2) inner seal absent, 3) broken and dried wiring throughout, 4) left rear quarter weld seams exposed with jagged edges, and 5) metal oxidation exposed and covered by rippled paint.
- Underside: 1) incorrect diameter, length, and routed brake lines, 2) fuel line spliced with kinked or misrouted rubber hose, 3) worn suspension components, 4) off-centered and tipped rear axle, 5) extensive rust throughout unibody underside, 6) unorthodox frame apron unibody mounting locations, 7) uneven tire wear, and numerous other defects.

23. Ott has suffered actual damages of over $23,000. This includes the following: over $12,500 in damages resulting from the diminished value of the Nova, $375 shipping costs, at least $53 in finance costs, and aggravation, inconvenience and emotional distress damages of over $10,000.

## COUNT I

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)**

24. Ott repeats and realleges herein Paragraphs 1-22.

25. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2, states in relevant part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful…

6

26. Additionally, the Illinois Motor Vehicle Code makes it "unlawful for any person to . . . knowingly permit to be driven or moved on any highway any vehicle . . . which is in such unsafe condition as to endanger any person or property …"  625 ILCS 5/12-101(a).

27. Illinois also requires salvaged vehicles like the Nova which are sold as rebuilt to be operable.

28. Thus, Defendants had a statutory obligation not to put unsafe cars on the road by deceiving Ott into purchasing an unsafe and inoperable car.

29. Ott is a consumer within the meaning of 815 ILCS 505/1(e).

30. CCC's sale of the Nova constituted the sale of merchandise and commerce as defined by 815 ILCS 505/1(b).

31. Defendants misrepresented the following material facts in violation of the Consumer Fraud Act: that the Nova's body was straight, had a 350 cubic inch engine, had been properly rebuilt to meet Illinois's statutory criteria and that it was operable and drivable.

32. In violation of the Consumer Fraud Act, Defendants omitted to disclose the material facts that the Nova had numerous structural and mechanical defects as set forth in paragraph 21 above, had not been properly rebuilt, was dangerous and illegal to drive and uninsurable.

33. Defendants knowingly failed to disclose the damaged and inoperable condition of the Nova resulting from the vehicle being un-merchantable, in sub-standard condition, and dangerous to drive. CCC and Noel had knowledge of these facts as CCC inspected the Nova before selling it to Ott and is an expert determining the condition of used and classic cars and would have taken special care to inspect a car that had been rebuilt and had a branded title. The unsafe and inoperable condition of the Nova is obvious to any knowledgeable person in the industry.

34. Defendants intended for Ott to rely on their misrepresentations, half-truths, and/or omissions of material fact. CCC knew that a consumer, like Ott, would not purchase the Nova if he knew of its true history and condition. CCC also knew that Ott would not have purchased the Nova if he knew it was inoperable, unsafe to drive and did not meet his conditions of being a "good everyday driver" with a 350 cubic inch engine.

35. Defendants knew that the Nova was un-merchantable, in sub-standard condition, and dangerous to drive and/or did not have a 350 cubic inch engine. Any car dealer, based on a simple inspection would have known the Nova was un-merchantable, in sub-standard condition, and dangerous to drive. The inspection of the Nova was made under CCC's ownership and therefore CCC and Noel knew that the Nova was un-merchantable, in sub-standard condition, and dangerous to drive.

36. Had Ott known the truth about the Nova, he would not have purchased it.

37. On information and belief, Noel was involved in supervising the publication of the online advertisement for the Nova that Ott viewed and knew that CCC was misrepresenting and omitting material facts in the sale of the Nova. On information and belief, CCC, at the direction of Noel misrepresented and omitted from the online advertisement, material facts regarding the Nova's inoperable, and unsafe condition and that it had not been properly rebuilt to Illinois statutory standards and could not be titled or insured in Wisconsin.

38. As a direct and proximate result of Defendants' fraud, Ott suffered damages of over $23,000, including, but not limited to:

    a. Paying an inflated price for the vehicle;

    b. Shipping costs;

    c. Finance costs;

       d.    Aggravation, inconvenience, and emotional distress damages.

39.    Ott has the option of unwinding the transaction and seeking recission damages and will make such election before trial.

40.    Defendants' conduct was willful and wanton, calling for the imposition of punitive damages of over $69,000 to punish and deter similar conduct in the future and to stop Defendants from continuing to violate the Illinois Vehicle Code by putting unsafe cars on the road that do not meet the statutory standards for a rebuilt car.

WHEREFORE, Roger Ott requests that judgment enter in his favor and against the Defendants as follows:

    A.    Actual damages in an amount to be proven at trial or recission of the transaction;

    B.    The costs incurred in this litigation, including expert fees;

    C.    Attorneys' fees;

    D.    Aggravation, inconvenience and emotional distress damages.

    E.    Punitive damages; and

    F.    Any other relief that the Court deems just.

## **DEMAND FOR JURY TRIAL**

Pursuant to FRCP 38(b), Plaintiff requests a trial by jury on the claims so triable.

Dated: May 27, 2021                                                                 ROGER OTT

                                                                                    By: /s/ Peter S. Lubin
                                                                                         One of his Attorneys

| | |
|---|---|
| Peter S. Lubin | Terrence Buehler |
| Patrick Austermuehle | LAW OFFICES OF TERRENCE BUEHLER |
| LUBIN AUSTERMUEHLE, P.C. | 19 South LaSalle, Suite 702 |
| 360 West Butterfield Rd, Suite 325 | Chicago, IL. 60603 |
| Elmhurst, IL 60126 | (312) 371-4385 |
| 630-333-0333 | tbuehler@tbuehlerlaw.com |
| peter@l-a.law | |
| patrick@l-a.law | |